IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Connector Experts, LLC, | ) |
| Plaintiff, | ) |
| | ) Case No. 1:23-cv-3683 |
| v. | ) |
| Findpigtails.com, LLC | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## Complaint

Plaintiff Connector Experts, LLC ("Connector Experts" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendant Findpigtails.com, LLC ("Findpigtails.com" or "Defendant"), alleges as follows:

### Introduction

1. This is an action for the unlawful and intentional infringement of Plaintiff's federally registered CONNECTOR EXPERTS trademark, U.S. Reg. No. 6431974, under 15 U.S.C. § 1114; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); cybersquatting under 15 U.S.C. § 1125(d); unfair competition under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510; and, trademark infringement and unfair competition under the State of Illinois' common law.

2. Connector Experts and Defendant both offer online retail store goods and services featuring automotive products, competing for the same customers. However, as described below, Defendant has implemented a multifaceted campaign to unfairly compete with Connector Experts. Without Connector Experts' authorization, Defendant makes repeated use of Connector Experts' trademark on its website, in its posts on social media websites, and in its search-engine

1

advertisements. Defendant even registered a "typosquatted" domain name, namely, a domain name that is a slight misspelling of Connector Expert's trademark, intended to mislead Internet users and used that infringing domain name as a redirect to Defendant's own website. To protect its valuable rights in and to the CONNECTOR EXPERTS trademark, Plaintiff brings this action.

## Parties

3. Plaintiff Connector Experts is an Illinois limited liability corporation with its principal place of business located at 2339 N California Ave # 47439, Chicago, IL 60647.

4. On information and belief, Defendant Findpigtails.com, LLC is a Delaware limited liability corporation with its principal place of business located at 9215 Thomasville Dr., Houston, TX 77064.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1338(b), because this case arises under the laws of the United States, namely, the Lanham Act, 15 U.S.C. § 1051, *et. seq.*, and involves related state law claims. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the claims arising under federal law that they form part of the same case or controversy.

6. This Court has personal jurisdiction over Defendant because it has sufficient minimum contacts with Illinois. Defendant deliberately and continuously transacts, advertises, and solicits business in this judicial district. In connection with its unauthorized use of Connector Expert's trademark, Defendant offers and makes available its goods and services, namely, operating an online marketplace, within Illinois. In connection with and furthered by its use of the infringing trademarks on its website, social media, and other advertisements, Defendant both offers

to ship and, on information and belief, actually ships and has shipped products to consumers within Illinois. Indeed, on its website, Defendant includes Illinois as a forum in the ship-to options from which Illinois customers may choose. Defendant knowingly and intentionally set up its website this way to allow it to exploit the Illinois market. On information and belief, Defendant has exploited the Illinois market, knowingly and intentionally doing business with Illinois businesses and residents. Moreover, in connection with and in addition to the foregoing, Defendant engages in tortious conduct (trademark infringement and unfair competition) that damaged, and continues to damage, Connector Experts in this judicial district. Finally, Defendant deliberately and intentionally transmitted into Illinois an offer to transfer a cybersquatted domain name to Connector Experts for financial gain. Accordingly, Defendant has availed itself of doing business in Illinois.

7. Venue is proper because a substantial part of the events or omissions giving rise to the claims alleged occurred in this district, 28 U.S.C. § 1391(b)(2).

**Factual Background**

8. Since at least as early as 2011, Connector Experts has continuously used CONNECTOR EXPERTS as a trademark for its online retail store goods and services featuring automotive products. These services are provided to consumers through Connector Experts' website located at www.connectorexperts.com. Connector Experts has sold millions of dollars' worth of automotive parts, including but not limited to clips, seals, terminals, and tools. Connector Experts has invested significant funds on marketing, advertising, and promoting its CONNECTOR EXPERTS trademark, acquiring and developing significant rights in and to the CONNECTOR EXPERTS trademark. Connector Experts has become well known among relevant consumers throughout the United States.

9. In addition to its strong common law rights in and to its trademark, Connector Experts owns a federal trademark registration, Reg. No. 6431974, for its CONNECTOR EXPERTS trademark as used in connection with the following services: "On-line retail store services featuring automotive products, namely, wiring products, wire harnesses, terminals, seals, clips, and tool" in International Class 35. Attached as **Exhibit A** is a copy of the registration certificate issued by the United States Patent and Trademark Office. This registration constitutes prima facie evidence of the validity of the registered trademark and of the registration of the CONNECTOR EXPERTS trademark, of the Connector Experts' ownership of the trademark, and of the Connector Experts' exclusive right to use the registered CONNECTOR EXPERTS trademark in commerce on or in connection with the identified goods and services. *See* 15 U.S.C. § 1115(a).

10. In addition to marketing on its website (www.connectorexperts.com), Connector Experts promotes and advertises its goods and services under its trademark in several ways, including, but not limited to, search-engine advertising, social media marketing, email marketing, and direct marketing.

11. As a result of Connector Expert's continued use and its extensive promotion and advertising of the trademark throughout the United States over many years, the CONNECTOR EXPERTS trademark represents extremely valuable goodwill for and owned exclusively by Connector Experts. The CONNECTOR EXPERTS trademark is distinctive and has become associated in the public mind with its goods and services, serving to distinguish the goods and services of Connector Experts from those emanating from other third parties.

**Defendant's Infringing Activity**

12. Long after Plaintiff's CONNECTOR EXPERTS trademark became well known and acquired secondary meaning, Defendant, without authorization, began using the CONNECTOR EXPERTS trademark, as well as confusingly similar variations of the trademark, in commerce in connection with Defendant's identical goods and services (collectively, the "Infringing Marks"). Defendant continues to use the Infringing Marks, including, but not limited to the advertising and marketing of its goods and services. Defendant makes wide-ranging use of the Infringing Marks in its various marketing and advertising efforts.

13. Defendant makes repeated use of the Infringing Marks on its website located at findpigtails.com. *See*, *e.g.*, attached as **Exhibit B** (which is also located at https://findpigtails.com/training/automotive-pigtail-connector-experts (last accessed May 23, 2023)). There, for example, Defendant prominently displays the Infringing Marks several times in bold and/or larger size fonts. Additionally, as shown in the hyperlink and on Exhibit B, Defendant also uses the Infringing Marks in its URLs.

14. Intending to cause a likelihood of confusion to its benefit, Defendant uses the Infringing Marks, and causes the Infringing Marks to be displayed, in Google search results. For example:




15. On information and belief, Defendant purchases or has purchased Connector Experts' trademark as advertising keywords for search engines, such as Google's search engine.

16. In addition, Defendant uses the Infringing Marks in its paid-for, consumer-facing search engine advertisements. For example, Defendant prominently uses and displays the

5

Infringing Marks in sponsored advertisements on Google, including but not limited to the following:



17. On information and belief, Defendant also intentionally configures its website, using techniques known as search engine optimization ("SEO"), to increase the likelihood that Google will display Defendant in the search results when Internet users search for Connector Experts.

18. Defendant also makes repeated use of the Infringing Marks on its social media, such as on YouTube and Facebook, to advertise its goods and services.

19. For example, as shown in the following screenshot of a video Defendant uploaded to its YouTube account on March 15, 2023, Defendant uses the Infringing Marks to advertise its goods and services, including making use of the Infringing Marks as a hashtag:



See https://www.youtube.com/watch?v=pfZ4eeVSRSk (last accessed May 15, 2023).

20. Defendant also uses the Infringing Marks to advertise its goods and services on Facebook. For example, on May 16, 2023, Defendant published a post on Facebook, using the Infringing Marks to advertise its goods and services:



See https://www.facebook.com/findpigtails/videos/how-to-de-pin-a-2-pin-auto-connector/273536358428185/ (last accessed May 17, 2023).

**Defendant's Cybersquatting and UDRP Proceedings**

21. In addition to the foregoing ways in which Defendant infringes on Connector Experts' trademark, Defendant registered the connectorsexpert.com domain name. A domain name registration of this kind is known as "typosquatting"; that is, "registering a domain name that is a slight misspelling (*i.e.*, reversing letters, adding a letter, or omitting a letter) of a protected mark in order to improperly divert customers that misspell the plaintiff's mark to the defendants' website."[1]

22. Immediately upon registering the connectorsexpert.com domain name, Defendant set the domain to redirect to its primary website located at findpigtails.com. On information and belief, Defendant obtained, and generated revenue from, consumers, through its redirection of the typosquatted domain name to its primary website.

23. Incorporated by reference into domain name registration agreements, the Uniform Domain Dispute Resolution Policy ("UDRP"), approved by the Internet Corporation for Assigned Names and Numbers ("ICANN"), provides a mandatory administrative proceeding to resolve domain disputes. The World Intellectual Property Organization ("WIPO") is an ICANN-approved dispute resolution service provider for UDRP complaints. To prevail, the UDRP complaint must show that: (i) the disputed domain name is identical or confusingly similar to a trademark in which the complainant has rights; (ii) the respondent has no rights or legitimate interests in the disputed domain name; and (iii) the domain name has been registered and is being used in bad faith.

---

[1] *Educ. Tours, Inc. v. Hemisphere Travel, Inc.*, No. 04 C 0559, 2004 U.S. Dist. LEXIS 7113, at *6-7 (N.D. Ill. Apr. 26, 2004); *see also Gioconda Law Grp. PLLC v. Kenzie*, 941 F. Supp. 2d 424, 430 n.6 (S.D.N.Y. 2012) (recognizing "courts have expressly held that the ACPA covers typosquatting").

24. On December 20, 2022, Connector Experts submitted to WIPO a UDRP complaint against Defendant, the registrant of the connectorsexpert.com at the time. After receiving notice of the action, Defendant chose not to participate in the UDRP proceedings.

25. On March 8, 2023, WIPO provided notification of the administrative panel's decision ordering that connectorsexperts.com domain name be transferred to Connector Experts. The panelist determined that the connectorsexperts.com domain name was confusingly similar to Connector Experts' trademark. The panelist also found that Defendant had no legitimate rights or interests in the connectorsexpert.com domain name, highlighting the facts that Defendant is not known by a corresponding name and that Defendant used the domain name to redirect internet users to Defendant's competing website. Finally, the panelist found that Defendant registered and used the connectorsexpert.com domain name in bad faith, indicating that, among other things, this was an instance of typosquatting.

### Connector Experts' Demand Letter

26. On December 22, 2022, shortly after submitting the UDRP complaint to WIPO, Connector Experts, through counsel, sent a demand letter to Defendant, demanding that Defendant transfer the connectorsexpert.com domain name and cease and desist use of the CONNECTOR EXPERTS trademark and any confusingly similar trademarks.

27. On January 11, 2023, Defendant, through counsel, responded in writing to Connector Experts. In its correspondence, Defendant proposed a "trade," which, when put in context, highlights Defendant's bad faith intent to profit from Connector Experts' trademark. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI).[2] In the domain name industry, it is well known that single-word

---

[2] Plaintiff may properly reference this "trade" proposal/offer in its Complaint. These factual allegations are not included to "prove or disprove the validity or amount of a disputed claim" but for "'another purpose,' Fed. R. Evid. 408(b), namely to prove an element at the core of Plaintiff's claim[.]" *Zinner v. Olenych*, 108 F. Supp. 3d 369, 391 (E.D. Va. 2015).

domain names are the most valuable, especially those with the top-level domain ("TLD") ".com". It is also well known that such domain names command at least six-figure dollar amounts in aftermarket transactions. In contrast, it is well known that domain names corresponding with trademarks, including those that consist of typosquatting, are in the category of the least valuable domain names, if not valueless.

28. In its correspondence, Defendant offered to transfer the connectorsexpert.com domain name in exchange for Connector Experts' different, single-word .com domain name. On information and belief, Defendant was aware that Plaintiff's single-word .com domain name was very valuable and worth at least a six-figure dollar amount. On the other hand, Defendant was aware that the connectorsexpert.com domain name was worthless in the aftermarket, since it was an instance of typosquatting. In sum, Defendant used the typosquatted domain name as a bargaining chip, offering to sell it only for valuable consideration and financial gain. Defendant's actions constitute an offer to sell the infringing domain name for financial gain.

### Defendant's Continued, Willful Infringement

29. Defendant has ignored Connector Experts' demands.

30. Despite knowledge of Connector Experts' rights, Defendant continues to infringe on Connector Experts' trademark.

31. As demonstrated above, Defendant makes, and has made, repeated wide-ranging use of Connector Experts' trademark, causing a likelihood of confusion.

### Count I
### Trademark Infringement (15 U.S.C. § 1114)

32. Connector Experts repeats and incorporates by reference all other paragraphs as if fully set forth here.

33. Defendant's actions constitute trademark infringement in violation of 15 U.S.C. § 1114.

34. Connector Experts is the owner of the federally registered CONNECTOR EXPERTS trademark, Reg. No. 6431974. Connector Experts' registered trademark is distinctive and has become associated in the public mind with Connector Experts' goods and services. Connector Experts registered trademark is valid and enforceable.

35. Defendant's use, and continued use, in commerce of CONNECTOR EXPERTS and variations thereof constitutes a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered trademark in connection with the sale, offering for sale, distribution, or advertising of its goods or services, which use is likely to cause confusion, or to cause mistake, or to deceive.

36. Defendant's use of Plaintiff's trademark was and is without Plaintiff's consent, approval, or authorization.

37. Defendant's use of the Infringing Marks began long after Plaintiff first used the CONNECTOR EXPERTS trademark.

38. Defendant has constructive knowledge of Plaintiff's rights. On information and belief, Defendant knows, and has long known, about Plaintiff's superior rights in the CONNECTOR EXPERTS trademark. Defendant's conduct constitute willful and deliberate infringement.

39. Plaintiff has sustained and continues to sustain injuries and damages that have been directly and proximately caused by Defendant's infringing conduct.

40. Plaintiff has no adequate remedy at law; Defendant's conduct has caused and, if not enjoined, will continue to cause irreparable damage to Plaintiff's goodwill and reputation as symbolized by its trademarks.

11

41. Defendant's infringement is willful, and for this reason and others, this matter should be deemed an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to attorneys' fees and costs.

42. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action pursuant to 15 U.S.C. §§ 1114, 1116, and 1117, together with prejudgment and post-judgment interest.

## Count II
### Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

43. Plaintiff repeats and incorporates by reference all other paragraphs as if fully set forth here.

44. Defendant's unauthorized and unlawful use of a confusingly similar trademark constitutes a false designation of origin which is likely to cause confusion, mistake, or deception as to the origin of Defendant's goods or services, and as to Defendant's affiliation, connection, or association with Plaintiff, or as to the sponsorship, endorsement, or approval of the Defendant's goods or services by Plaintiff.

45. Defendant's infringement is willful, and for this reason and others, this matter should be deemed an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to attorneys' fees and costs.

46. Plaintiff has sustained and continues to sustain injuries and damages that have been directly and proximately caused by Defendant's infringing conduct.

47. Plaintiff has no adequate remedy at law; Defendant's conduct has caused and, if not enjoined, will continue to cause irreparable damage to Plaintiff's rights in and to its trademarks.

## Count III
### Anti-Cybersquatting Piracy Act (15 U.S.C. § 1125(d))

48. Plaintiff repeats and incorporates by reference all other paragraphs as if fully set forth here.

49. The ACPA prohibits bad faith registration, trafficking, or use of a domain name that is "identical or confusingly similar to" a trademark that is "distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d).

50. Plaintiff's is the owner of the CONNECTOR EXPERTS trademark, which is inherently distinctive and/or has acquired secondary meaning.

51. When Defendant registered the connectorsexpert.com domain name, Plaintiff's CONNECTOR EXPERTS trademark was a valid, distinctive trademark.

52. Defendant registered, trafficked in, or used the connectorsexpert.com domain name that is nearly identical and confusingly similar to Plaintiff's CONNECTOR EXPERTS trademark.

53. As shown above, Defendant's conduct demonstrates that Defendant had a bad faith intent to profit from Plaintiff's trademark.

54. Defendant's registration and use of the connectorsexpert.com domain name was likely to cause confusion, to cause mistake, and to deceive as to the origin, source, or sponsorship of the infringing domain name among the public.

55. Because of Defendant's cybersquatting, Plaintiff suffered damage and injury to its business, reputation, and goodwill, with a loss of revenues and profits, in an amount yet to be determined and subject to a treble damages award pursuant to 15 U.S.C. § 1117(a).

56. Alternatively, Defendant's actions justify an award of statutory damages in an amount of $100,000 pursuant to 15 U.S.C. § 1117(d).

57. Defendant engaged in these activities knowingly, willfully, and deliberately. This is an exceptional case, which justifies an award of Plaintiff's attorneys' fees and costs.

## Count IV
### Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2)

58. Plaintiff repeats and incorporates by reference all other paragraphs as if fully set forth here.

59. Defendant's use, advertisement, and sale of the offending goods and services in connection with the Infringing Marks constitute deceptive trade practices in violation of 815 ILCS 510/2 et seq., including but not limited to:

60. Defendant has engaged in unfair and deceptive acts and practices which have created a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of goods or services in violation of 815 ILCS 510/2(a)(2).

61. Defendant has engaged in unfair and deceptive acts and practices which have created a likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another in violation of 815 ILCS 510/2(a)(2).

62. Defendant has engaged in other conduct which similarly creates a likelihood of confusion or of misunderstanding in violation of 815 ILCS 510/2(a)(12).

63. Plaintiff has sustained and continues to sustain injuries and damages that have been directly and proximately caused by Defendant's infringing conduct.

64. Plaintiff has no adequate remedy at law; Defendant's conduct has caused and, if not enjoined, will continue to cause irreparable damage to Plaintiff's rights in and to its trademarks.

65. Because Defendant willfully engaged in a deceptive trade practice, Plaintiff is entitled to an award of both costs and attorneys' fees pursuant to 815 ILCS 510/3.

## Count V
### Trademark Infringement and Unfair Competition
### Under Illinois Common Law

66. Plaintiff repeats and incorporates by reference all other paragraphs as if fully set forth here.

67. As described above, Defendant's conduct constitutes trademark infringement and unfair competition under the common law of the State of Illinois.

68. Plaintiff owns valid and protectable rights in the CONNECTOR EXPERTS trademark.

69. Defendant's conduct is likely to cause confusion, mistake, or to deceive as to the source of Defendant's goods and services, or as to affiliation, connection, association, sponsorship, or approval of such goods and services.

70. Defendant infringed Plaintiff's trademark with knowledge and intent to cause confusion, mistake, or deception.

71. Plaintiff has sustained and continues to sustain injuries and damages that have been directly and proximately caused by Defendant's infringing conduct.

72. Plaintiff has no adequate remedy at law; Defendant's conduct has caused and, if not enjoined, will continue to cause irreparable damage to Plaintiff's rights in and to its trademarks.

## Prayer for Relief

Wherefore, Connector Experts respectfully requests that this Court enter a Judgment in its favor and against Defendant as follows:

A. Entering judgment in Connector Expert's favor and against Defendant, finding Defendant in violation of all counts of the Complaint;

B. That Defendant has violated Section 32 of the Lanham Act, 15 U.S.C. § 1114, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the ACPA, 15 U.S.C. § 1125(d), Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and Illinois common law trademark infringement and unfair competition;

C. Declaring that this is an exceptional case pursuant to 15 U.S.C. § 1117;

D. Declaring that Defendant willfully engaged in a deceptive trade practice pursuant to 815 ILCS 510/3;

E. Awarding to Connector Experts all compensation to which it is entitled under 15 U.S.C. §§ 1114, 1117, 1125, 815 ILCS 510/1 *et seq.*, and Illinois common law, including attorneys' fees, costs, expenses, exemplary, statutory, and/or treble damages;

F. Awarding to Connector Experts, if elected, statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d);

G. Ordering the destruction of all offending advertisements in Defendant's possession, custody, or control;

H. Granting an injunction permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   i. manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise or promote Defendant's goods and services bearing the Infringing Mark or any other trademark that is confusingly similar to Plaintiff's trademarks;

   ii. engaging in any activity that infringes Plaintiff's trademarks;

      iii.     engaging in any activity that constitutes unfair competition with Plaintiff;

      iv.     forming or causing to be formed any corporation or other entity that engages in any of the enjoined conduct; and

I. Awarding Plaintiff pre-judgment and post-judgment interest;

J. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Under Fed. R. Civ. P 38, Plaintiff requests trial by jury.

Dated: June 12, 2023                    Respectfully submitted,

/s/ *Charles G. Giger*
Charles G. Giger
Jordan Arnot Leahey
CULHANE MEADOWS PLLC
13101 Preston Road, Ste. 110-1520
Dallas, Texas 75240
cgiger@cm.law

*Attorneys for Plaintiff,
Connector Experts, LLC*